UNITED STATES of America

v.

CHRYSLER CORPORATION, Appellant.

No. 77–2098.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 5, 1978.

Decided Jan. 12, 1979.

**959**

James A. Hourihan, Washington, D. C., with whom Gail Starling Marshall, Washington, D. C., was on the brief, for appellant.

John E. Varnum, Atty., Dept. of Justice, Washington, D. C., with whom James W. Moorman, Asst. Atty. Gen., Angus Macbeth, and Dirk D. Snel, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Before TAMM, ROBINSON and Mac-KINNON, Circuit Judges.

Opinion for the court filed by Circuit Judge, TAMM.

TAMM, Circuit Judge:

The Chrysler Corporation (Chrysler) appeals from a ruling of the United States District Court for the District of Columbia (Hart, J.) that Chrysler violated section 203(a) of the Clean Air Act (Act). The district court held that when one or more parts erroneously installed in a vehicle are intimately related to and reasonably may be expected to affect emission controls, such vehicle is not covered by the certificate of conformity although the vehicle may, in fact, meet emission standards. *United States v. Chrysler Corp.*, 437 F.Supp. 94 (D.D.C.1977). We affirm.

The facts in this case are not in dispute. In mid-1973, Chrysler applied to the Environmental Protection Agency (EPA) for a certificate of conformity in order to market its 1974 model vehicles, as required by section 203(a)(1).[1] On August 3, 1973, EPA issued a certificate of conformity to Chrysler for its RG engine family.[2] The certificate by its terms covered "only those new motor vehicles or new motor vehicle engines which conform, in all material respects, to the design specifications described in the application for this certificate and which are produced during the 1974 model year production period." 437 F.Supp. at 95–96.

After the 1974 models were produced, EPA and the California Air Resources Board[3] discovered thirty-seven vehicles that were equipped with parts different

1. Section 203(a)(1) prohibits, in pertinent part:

    [I]n the case of a manufacturer of new motor vehicles or new motor vehicle engines for distribution in commerce, the sale or the offering for sale, or the introduction, or delivery for introduction, into commerce, or (in the case of any person, except as provided by regulation of the Administrator), the importation into the United States of any new motor vehicle or new motor vehicle engine, manufactured after the effective date of regulations under this part which are applicable to such vehicle or engine unless such vehicle or engine is covered by a certificate of conformity issued (and in effect) under regulations prescribed under this part . . . .

    42 U.S.C. § 1875f–2(a)(1) (1976) (as amended 42 U.S.C.A. § 7522 (1977)).

2. Chrysler's RG engine family included 198 and 225 cubic inch displacement engines used in, among others, its Plymouth Valiant and Dodge Dart automobiles.

3. The Environmental Protection Agency (EPA) granted California the authority to impose its own more stringent standards for emission controls of 1974 model cars. *See* 37 Fed.Reg. 8128 (1972). To comply with California standards, Chrysler manufactured both "California" vehicles and "non-California" vehicles. According to Chrysler, the error in assembly that precipitated this case occurred when "California" parts were installed in "non-California" vehicles, or vice versa; or when parts for use in automatic transmission vehicles were installed in manual transmission vehicles, or

than those specified in Chrysler's application for the certificate of compliance.[4] On January 7, 1976, the United States brought a civil action to impose penalties for Chrysler's alleged violation of section 203(a)(1).[5] The government contended that the automobiles with different parts did not conform, in all material respects, to the design specifications described in the application and therefore were not covered by the certificate of conformity. The district court, upholding these contentions, found thirty-seven violations of the Act, and levied a fine of $3,700 against Chrysler.[6] This appeal followed.

Chrysler urges us to hold that a misbuilt vehicle is covered by a certificate of conformity if it meets federal emission standards. The United States asks us to affirm the district court's holding. Evaluation of the merits of these contentions demands an understanding of the structure of the Act. Section 206(a)(1)[7] of the Act requires EPA to test, or have tested, any new motor vehicle or motor vehicle engine to determine whether the vehicle conforms to emission standards set out in section 202.[8] The tests are begun after a manufacturer submits an application for certification. The application contains a list of vehicle parameters and specifications that reasonably may be expected to affect the output of emissions. The EPA tests two types of prototype vehicles. "Durability" vehicles are tested to establish the deterioration of emission controls when the automobile is driven for 50,000 miles. "Data" vehicles are tested to determine the level of emissions when the

automobile is run for 4,000 miles. If the tests show that the vehicle will meet federal standards, EPA will issue a certificate of conformity. Joint Appendix at 42–43.

A certificate of conformity is, in effect, a license that allows an automobile manufacturer to sell vehicles to the public. Under section 203(a)(1), the manufacturer may only distribute vehicles that are "covered" by a certificate of conformity. Section 203(a)(1) also allows EPA to promulgate regulations governing the issuance and effect of such certificates. Accordingly, EPA has determined that a certificate of conformity "covers only those new motor vehicles which conform, in all material respects, to the design specifications that applied to those vehicles described in the application for certification." 40 C.F.R. § 85.074-30(a)(2) (1976). The language of the regulation and applicable statutes, taken together, explicitly commands that each vehicle conform to design specifications. Nothing indicates that compliance with emission control standards is to be the controlling standard.

EPA, in spite of its emphasis on "design specifications," does not contend that every misbuilt vehicle constitutes a violation of section 203(a)(1). The district court adopted the government's position that an automobile was "materially" different if the difference in parts reasonably may be expected to affect emission controls. Judge Hart's test for materiality properly places maximum emphasis on congressionally mandated prototype testing. Adoption of

vice versa. Brief for Appellant Chrysler Corporation at 5.

4. The mistaken parts included distributors, carburetors, exhaust gas recirculation valves and orifice spark advance controls.

5. Section 305 of the Clean Air Act (Act), 42 U.S.C. § 1857h–3 (1976) (as amended 42 U.S.C.A. § 7605(a) (1977)), authorizes the Attorney General to represent EPA in any civil action in which EPA is a party.

6. Under section 205 of the Act, 42 U.S.C. § 1857f–4 (1976) (as amended 42 U.S.C.A. § 7524 (1977)), the sale of each motor vehicle in violation of section 203(a)(1) constitutes a sep-

arate offense. Each offense may be subject to a civil penalty of not more than $10,000.

7. 42 U.S.C. § 1857f–5(a)(1) (1976) (as amended 42 U.S.C.A. § 7525 (1977)).

8. 42 U.S.C. § 1857f–1 (1976) (as amended 42 U.S.C.A. § 7521 (1977)). Section 202(a)(1) provides that the Administrator of the EPA "shall by regulation prescribe . . . standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles . . . which in his judgment causes or contributes to, or is likely to cause or to contribute to, air pollution which endangers the public health or welfare."

Chrysler's approach, on the other hand, would allow a manufacturer to sell vehicles without certificates of conformity if he could later prove that they meet the applicable emission standards. This result would frustrate clear congressional intent, as expressed in sections 203 and 206, that vehicles pass emission tests *before* they may be sold to the public. We do not believe that the Congress that provided for mandatory premarketing certification, and for civil penalties for the sale of each vehicle not covered by a certificate of conformity, would have favored use of a test that conceivably could subject every automobile to emission tests after manufacture and sale.

As this court previously has stated, "our duty is to favor [a statutory] interpretation which would render the statutory design effective in terms of the policies behind its enactment and to avoid an interpretation which would make such policies more difficult of fulfillment, particularly where, as here, that interpretation is consistent with the plain language of the statute." *National Petroleum Refiners Association v. FTC*, 157 U.S.App.D.C. 83, 100, 482 F.2d 672, 689 (1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). In view of the clear language of the statutes, the regulations, and the policies favoring presale certification, the district court correctly held that where one or more parts erroneously installed in a vehicle are intimately related to and reasonably may be expected to affect emission controls, such vehicle is not covered by the vehicle's certificate of conformity.

Chrysler also argues that EPA, by waiving federal preemption of California emission controls standards, is precluded from seeking civil penalties with regard to twenty-five of the thirty-seven vehicles that were manufactured pursuant to California regulations and sold in California. *See* Brief for Appellant Chrysler Corpora-

tion at 37–40. Section 209(a) of the Act[9] provides that no state may enforce its own emission controls standards. Section 209(b)[10] gives EPA authority, however, to waive the applicability of section 209. Chrysler would have us read the waiver of the prohibition of state action[11] as a waiver of federal authority. We find no basis in precedent or logic for Chrysler's position. Federal preemption of state law displaces state authority. The decision not to preempt simply allows both federal and state authorities to regulate emission controls.

Accordingly, the decision of the district court is

*Affirmed.*

---

**9.** 42 U.S.C. § 1857f–6a(a) (1976) (as amended 42 U.S.C.A. § 7543(a) (1977)).

**10.** 42 U.S.C. § 1857f–6a(b) (1976) (as amended 42 U.S.C.A. § 7543(b) (1977)).

**11.** *See* 37 Fed.Reg. 8128 (1972).